**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAGROOP SINGH** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:26-cv-3281-MDH** |
| | ) | |
| **JIM ARNOTT,** *et. al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be released or granted a hearing. The Court agrees with Petitioner's Statutory arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Petitioner Jagroop Singh is a 31-year-old native and citizen of India who has lived continuously in the United States for nearly eight years. He has no criminal history before the current arrest that placed him in ICE custody. He is the brother of a United States citizen.

Petitioner entered the country in July 2018 and was placed in expedited removal proceedings. On October 18, 2018, ICE itself classified Mr. Singh as a § 1226(a) detainee. After the asylum officer's positive credible-fear finding vacated the § 235(b)(1) order pursuant to 8 C.F.R. § 208.30, ICE issued a Notice of Custody Determination (Form I-286) expressly invoking "the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations," and setting bond at $12,000. Eleven days later, on October 29,

1

2018, the Houston Field Office Director approved and accepted Mr. Singh's posted Immigration Bond on Form I-352, a § 236(a) delivery bond captioned at paragraph G-1 as "BOND CONDITIONED UPON THE DELIVERY OF AN ALIEN."

He has resided in Stockton, California ever since, complying with every condition of his release, working lawfully on a category C08 employment authorization document, filing taxes, and pursuing his asylum claim. His next master calendar hearing is set for December 11, 2028, before the San Francisco Immigration Court.

On or about April 24, 2026, ICE again detained Mr. Singh. According to Petitioner's counsel, this occurred without a warrant, prior notice, a hearing, an individualized determination of changed circumstances, or any allegation that he had violated the terms of his release.

In its Response, the Government presented additional facts that ICE encountered Petitioner on April 28, 2026, in the Steuben County Jail in Angola, Indiana following his arrest on Apil 25, 2026, by the Indiana State University Police. (Doc. 5-1). On that date, he was arrested for Identity Deception in violation of INDIANA CODE § 35-43-5-3.5 (a felony), for False Identity Statement in violation of INDIANA CODE § 35-44.1-2-4 (a misdemeanor), and for Display of Another's Identification Card in violation of INDIANA CODE 9-24-16-12 (a misdemeanor). (Doc. 5-1). Thereafter, ICE issued an arrest warrant for Petitioner and took him into custody. See WARRANT FOR ARREST OF ALIEN (Doc. 5-2). From there he was transferred to the Greene County Jail in Springfield, Missouri, where he is now confined.

Now, he has filed this writ seeking release, or at a minimum, any process at all. The matter has been fully briefed by each party. Petitioner bases the writ on statutory grounds and Constitutional grounds under the Fifth Amendment.

2

While the statutory grounds upon which Petitioner cites has, for the past twenty-nine years and five presidential administrations, been interpreted to mean that he was entitled to a bond hearing during his removal proceedings, the new presidential administration has adopted a novel interpretation of that statutory scheme.

A divided panel of the 8th Circuit recently agreed with this administration's interpretation, in a decision still subject to rehearing, en banc rehearing, or appeal. *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). At this time, this Court is bound by the panel's interpretation of the statutory scheme.

The Eighth Circuit decided whether § 1225(b)(2)(A) authorized that initial detention. *Id*. at 1133-38. However, the panel did not consider whether the government may invoke § 1225(b)(2)(A) to revoke a prior § 236(a) release without notice or hearing, or whether the agencies' bond regulations continue to apply to a person they already processed under them. On these facts, it is apparent that this Petitioner's posture differs from *Avila* in a material way.

**DISCUSSION**

Respondents argue that Petitioner was deemed an "arriving alien" under Section 1225 when he was paroled by ICE in 2018, so thus now he is again deemed to be an arriving alien subject to mandatory detention under Section 1225(b)(2)(A). The Court disagrees. The Response itself pleads that Mr. Singh was "conditionally released (8 U.S.C. § 1226(a)) as was Singh." (Doc. 5, at 4). The documentary record independently confirms the same point. The Form I-286 (Doc. 1-3) recites custody authority "under section 236" and orders release "Under bond in the amount of $12,000.00"; the Form I-352 (Doc. 1-4) is captioned at paragraph G-1 as a "BOND CONDITIONED UPON THE DELIVERY OF AN ALIEN," the standard caption of a delivery

3

bond under § 236(a); and the government's Form I-213 recites that "SINGH was, on 10/29/2018 released from ICE custody on a 12,000 dollar bond." (Doc. 5-1, at 3). Nothing in the record describes the 2018 release as a § 212(d)(5) parole.

In *Avila,* the Eighth Circuit decided whether § 1225(b)(2)(A) authorized that initial detention. *Id*. at 1133-38. The panel did not consider whether the government may invoke § 1225(b)(2)(A) to revoke a prior § 236(a) release without notice or hearing, or whether the agencies' bond regulations continue to apply to a person they already processed under them.

Mr. Singh's posture is clearly different. ICE took him into custody in 2018; made an individualized custody determination on Form I-286 invoking § 236; accepted a $12,000 delivery bond; and released him. He lived continuously in Stockton, California for more than seven years, on terms set by ICE itself, before re-detention. (Doc. 5-1, at 1, 3). None of those facts appear in *Avila*. Thus, the Court finds his previous classification under § 1226(a) is operative and he should be awarded a bond determination hearing.[1]

### **Attorneys' Fees**

Petitioner requests an award of reasonable attorneys' fees and costs. Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million

---

[1] Respondents, in a footnote, without further argument, bring up 1226(c). Section 1226(c)(1)(E)(ii) covers only enumerated offenses, here burglary, theft, larceny, or shoplifting, defined by reference to the law of the jurisdiction in which the acts occurred. Respondents cite no Indiana statute, charging document, or authority establishing that the offenses charged here are Indiana burglary, theft, larceny, or shoplifting. The Court finds the present offenses do not fall within 1226(c) like Respondents suggest.

dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. Respondents' assertion that Petitioner can now be classified under §1225 after previously being classified and released under §1226 is misguided. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## **CONCLUSION**

The Court concludes Petitioner's detention is classified under §1226(a), thus he should be awarded a bond redetermination hearing. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to provide Petitioner a neutral hearing addressing flight risk, danger, and the alleged statutory basis for mandatory detention.

2. If a meaningful bond hearing is not provided, Petitioner shall be immediately released, and Respondents shall make accommodations available for Petitioner until such time as arrangements can be made for Petitioner to be returned to the location of arrest or other location agreed by the parties.

5

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

4. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: May 22, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**